## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **DAVE BRYANT and VIKKI BRYANT,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:14-CV-1074-WKW-PWG** |
| | ) | |
| **COMMUNITY BANKSHARES, INC.** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## REPORT AND RECOMMENDATION

On October 21, 2014, the plaintiffs, Dave and Vikki Bryant, filed this civil action against Community Bankshares, Inc. ("Bankshares"), the Estate of Steven C. Adams, Edwin B. Burr, Elton Collins, Wesley A. Dodd, Jr., William R. Stump, Jr., Mary Wilkerson, and various fictitiously named defendants. All claims are brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), in connection with losses the plaintiffs allegedly suffered when their employer, Bankshares, was closed by the Georgia Department of Banking and Finance. As a result of the closure, the plaintiffs' accounts in the Bankshares Employee Stock Option Plan (the "Plan"), in which each plaintiff was invested 100% in Bankshares stock, became worthless.

The plaintiffs' first cause of action, brought pursuant to 29 U.S.C. § 1132(a)(1)(B), claims that, under the Plan, they had a right to, and specifically requested that, Bankshares diversify their holdings.  They sue "'to enforce [their] rights under the terms of the plan.'" (Doc. 1 at 8) (quoting 29 U.S.C. § 1132(a)(1)(B)) (Count One).  Next, the plaintiffs claim that the defendants breached the fiduciary duties owed to the plaintiffs by not executing the transfers needed to effect the diversification requests the plaintiffs allegedly made.  (Count Two).  Finally, the plaintiffs seek a reasonable attorney's fee and costs of this action under 29 U.S.C. § 1132(g)(1).  (Count Three).

On November 25, 2014, the above-styled matter was referred to the undersigned for review by Chief United States District Judge William Keith Watkins. (Doc. 26); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).  The court has subject matter over this dispute pursuant to 28 U.S.C. § 1331.  Personal jurisdiction and venue are not contested by the parties, and the court finds sufficient information of record to support both.

The case comes before the court on the defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc.

14).  For the reasons stated herein, it will be **RECOMMENDED** that the defendants' motion to dismiss be **GRANTED** as to Count One, and that Count One of the Complaint be **DISMISSED WITH PREJUDICE**.  In all other respects it will be **RECOMMENDED** that the motion be **DENIED**.

## I.    STANDARD OF REVIEW

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556) ("*Iqbal*").  That is, the complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation and footnote omitted).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557 (citation omitted).

3

Once a claim has been stated adequately, however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (citation omitted). Further, when ruling on a motion to dismiss, a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).

## II.   ALLEGATIONS IN THE COMPLAINT[1]

Dave and Vikki Bryant were "long-time" employees with Bankshares, who, over the years, had invested in the Plan.  (Doc. 1 at 1).  Bankshares administered the Plan and actively encouraged its employees to invest in its own stock.

Under the Plan, the administrator had a fiduciary obligation to act for the benefit of all Plan participants.  The Plan provides:

> The Plan Administrator, the Investment Committee, the Trustee and any Investment Manager (and any other party who may at any time be serving as a Fiduciary with respect to the Plan) shall discharge their duties solely in the interest of the Participants, for the exclusive purpose of providing benefits to the Employees as herein described and defraying reasonable expenses of administration, in accordance with the Plan and consistent with the fiduciary responsibility provisions of ERISA Title I, and with the care, skill, prudence and diligence, under

---

[1] There are also twelve attachments to the complaint.  (Doc. 1 at Exhibits A-L).  If a document is attached to a complaint as an exhibit, "we treat [it] part of the complaint for Rule 12(b)(6) purposes."  *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215-16 (11th Cir. 2012).  The allegations of facts set out herein will also include those found in the attachments to the complaint.

the circumstances then prevailing, that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

(Doc. 1-1 at 48).

Although the Plan was invested primarily in Bankshares stock, the Trustee of the Plan had the discretion to diversify a portion of the Plan in other investments such as stocks, trust shares, mutual fund shares, annuities, bonds, mortgages or commercial paper.  Further, each eligible participant had the right to diversify his or her own holdings under the Plan.  The Plan provided:

> Each Eligible Participant may elect, in a writing delivered to the Plan Administrator within ninety (90) days after the close of each Plan Year during the Qualified Election Period, to diversify the investment of twenty-five percent (25%) of such Participant's Employer Contribution Account in the Plan, determined as of the Annual Valuation Date for the Plan Year preceding the Plan Year in which such election is made (to the extent such portion exceeds the amount to which a prior election under this Section 8.3 applies); provided that in the case of the election year in which the Participant is permitted to make his last such election, fifty percent (50%) shall be substituted for twenty-five percent (25%) in applying this Section 8.3.

(Doc. 1-1 at 47).  The Plan also provided:

> Any Participant (or his Beneficiary) receiving a distribution of Company Stock from the Plan at a time when such Company Stock is not readily tradeable on an established market shall have a "put option" on such shares, giving him the right to have the Company purchase such shares. The same right shall apply to any Company Stock distributed to a Participant (or his Beneficiary), at a time when such Company Stock is not readily tradeable on an established market.

5

(Doc. 1-1 at 28).

On February 25, 2009, each plaintiff was sent a notice from Bankshares which stated:

> Under the terms of the Community Bankshares, Inc. Employee Stock Ownership Plan, your account balance is invested primarily in stock issued by the plan sponsor. However, the plan allows you to tell the trustee how you want a portion of your plan account invested. You may elect to have this amount (1) paid directly to you, (2) transferred to an IRA, (3) transferred to the Community Bankshares, Inc., 401(k) Plan, or (4) remain invested in employer securities under this plan.
>
> The amount subject to your direction is 50%[2] of your account balance invested in employer securities adjusted for any previous distributions, transfers or diversifications.
>
> Please complete this form and return it to Wes Dodd no later than April 15, 2009. Your direction will be implemented no later than June 30, 2009.

(Doc. 1 at 6; Doc. 1-2 at 2; Doc. 1-3 at 2).  Both plaintiffs signed the election form, checking the option for "I want to transfer the shares subject to my election to an IRA."  (Doc. 1-2 at 2; Doc. 1-3 at 2).  They each returned their form to the Plan Administrator, Wes Dodd, on April 14, 2009.

When the plaintiffs did not receive a confirmation that their investments had been diversified, Dave Bryant began calling Dodd to inquire as to the status of the transfers.  According to the complaint:

---

[2] Vikki Bryant's notice gave her the option to diversify 25%.

Dodd claimed that the FDIC investigation of the bank was "slowing everything down" but assured Mr. Bryant, "don't worry, your investment is safe and we'll get that transfer completed." Mr. Bryant made several more phone calls to Mr. Dodd checking on the status of the transfers. Each time, Mr. Dodd repeated the same story and assured Mr. Bryant that the transfers would be completed. Just before Mr. Dodd left Bankshares in September 2009, he again told Mr. Bryant that the transfers would be completed within the week. Mr. Dodd informed Mr. Bryant that he should call the human resources department if the transfers weren't completed.

(Doc. 1 at 6).

By October 2009, the transfers were still not processed, and Dave Bryant called the new Plan Administrator, Bankshares Vice President of Human Resources Mary Wilkerson. After explaining the problem to Wilkerson, Wilkerson "told Mr. Bryant that the transfers would not happen and that Mr. Dodd had misled the Bryants when he said the transfers would be processed." (Doc. 1 at 7). Wilkerson also did not diversify the holdings in the plaintiffs' accounts.

In November of 2009,

the plan stopped accepting contributions and terminated its participants as described in [a] letter to the participants dated November 2, 2009. This letter informed the [Plan] participants that their stock had little or no value and gave participants the option to receive the cash from their account. Community Bankshares advised that participants would receive no other value for their [Plan accounts] (other than the proposed cash distribution) and the retained stock would be held for later distribution.

(Doc. 1-5 at 2-3).[3]

On January 29, 2010, the Georgia Department of Banking and Finance closed Bankshares and named the FDIC as receiver.  The loss of Bankshares principal asset caused Bankshares stock to lose its value.  Because the Bryants were invested 100% in Bankshares stock, their plans became worthless.

By letter dated March 12, 2014, Stephen D. Wadsworth, the attorney for the plaintiffs, made an administrative claim on Bankshares for the sums the plaintiffs allegedly lost under the plan.  (Doc. 1-9 at 2-3).  In response, William R. Stump, Jr., President and Chief Executive Officer of Bankshares "as Plan Administrator," denied the claim, writing:

> Ordinarily, the Plan Administrator would have been obligated to implement [the Bryants'] April 2009 Diversification Request on or before June 30, 2009.  At the time, however, [Bankshares'] stock had dramatically declined in value from $11.00 per share in December 2008 to just $5.20 per share in June 2009, and [Bankshares'] financial situation was deteriorating further. [Bankshares] knew that the value of its shares would continue to decrease (and indeed, they fell to just $2.30 by November 2009).  If the stock had been transferred to [the Bryants'] IRA[s], [Bankshares] was not in a position to honor the put option to

---

[3]  Although not alleged in the complaint, several attachments to the complaint allude to a November 2009 diversification request wherein the plaintiffs opted to stay invested in Bankshares 100%. (*See,* Doc. 1-10 at 6; Doc. 1-11 at 5-6; Doc. 1-12 at 3-4; Doc. 1-13 at 3-4; Doc.1-14 at 3-4). Curiously, the actual diversification requests themselves have <u>not</u> been attached by any party, so the court has not included this as a "fact."  Notably, the November 2009, diversifications were discussed by the defendants in their motion, but ignored by the plaintiffs in their response. (*See* Doc. 32 at 9, discussing the basis for the Plan Administrator's decision, but omitting any discussion of the second diversification requests.)

repurchase the stock, nor did [Bankshares] have a good valuation for the stock since it was declining so rapidly in value. The Plan also could not distribute cash to [the Bryants] (or other participants electing diversification of their account) for the value of stock because that would have had an adverse effect on other Plan participants. [Bankshares] decided to suspend all diversification requests until it could develop a plan that would be fair and equitable to all Plan participants. [Bankshares] had a fiduciary responsibility to act for the benefit of all participants and [Bankshares] could not honor diversification elections to the detriment of other Plan participants. As a result, [Bankshares] properly concluded that it could not grant [the Bryants']April 2009 Diversification Request.

[The Bryants'] Claim is also denied because [the Bryants] ultimately elected for [their] shares to remain invested in the Plan. In [their] November 2009 Diversification Request, [the Bryants] voluntarily elected for [their] shares to remain invested in the Plan. [The Bryants] could have directed the Plan to transfer [their] shares to an IRA and the Plan would have done so. [The Bryants] executed [their] November 2009 Diversification Request and submitted it to the Plan Administrator. [The Bryants'] November 2009 Diversification Request revoked [their] April 2009 Diversification Request and rendered it null and void. There is no outstanding request by [the Bryants].

(Doc. 1-10 at 6; Doc. 1-11 at 5-6).

By letter dated August 6, 2014, attorney Wadsworth appealed Stump's decision, writing, in pertinent part:

Your letter suggests that the claim is denied because it was impossible for the Bank to diversify the Bryants' accounts without having an adverse effect on other Plan participants. The Alabama Supreme Court, however, has repeatedly refused to recognize impossibility as a defense to a contract action. *See, e.g., Silverman v. Charmac, Inc.*, 414 So.2d 892, 894 (Ala. 1982); *City of Gulf Shores v. Harbert Int'l*, 608 So.2d 348, 352 (Ala. 1992) ("we have repeatedly rejected the impossibility

defense"); *Middlegate Dev., LLP v. Beede*, CIV.A. 10-0565-WS-C, 2011 WL 3475474 (S.D. Ala. Aug. 9, 2011). As a result, your obligation to diversify the [Bryants'] holdings in June 2009 was absolute. Indeed, the facts you cite in support of impossibility suggest that the Bank chose not to diversify because it did not want to buy its own rapidly collapsing stock. Instead, it let its own employees absorb the blow. There is no legal or factual reason why the Bank could not diversify the accounts before October 14, 2009.

Further, the Bryants' decision to fill out the second diversification request did not approve or ratify the Bank's breach. Instead, the Bryants were mitigating their damages. The Bank sent a letter to the [Plan] participants who had elected to diversify their holdings stating that the Plan did not "have enough cash, or the ability to raise additional cash, to implement fairly participants' diversification elections." You then informed the [Plan] participants that if they intended to pursue diversification, it would take the form of a distribution of common stock which would be taxable to the participants which could not be sold and would not be accompanied by money to cover the tax liability. The Bryants' choice then — as you presented it — was to accept the total loss of the value of the [Plan] or to accept the total loss of value of the [Plan] and incur additional tax liability by acquiring a functionally worthless stock. This, of course, is no real choice at all.

(Doc. 1-12 at 3-4).

Bankshares denied the appeal by letter dated October 3, 2014, stating:

As explained in the Denial of [the Bryants' claims], [the Bryants'] April 2009 diversification requests [were] not honored in part because it would have had an adverse impact on other Plan participants. CBI, as the Plan Administrator, had a duty to act for the benefit of all Plan participants, not just [the Bryants].   Plan § 8.4; see also 29 U.S.C. § 1104(a)(l)(A) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries .... "); *Ameritech Benefit Plan Comm. v. Commc'n Workers of Am.*, 220 F.3d 814, 825 (7th Cir. 2000) (recognizing that ERISA's fiduciary duty

requires plan administrators to "act in the best interest of all the beneficiaries" such that plan administrators are "not allowed to favor one class of beneficiaries over another"); *Barnhart v. Unum Life Ins. Co. of Am.*, 179 F.3d 583, 589 (8th Cir. 1999) ("Fiduciary obligations extend primarily to the plan as it relates to all beneficiaries, not just to individual claimants.").

CBI could not authorize the distribution of cash to [the Bryants] (or any other participant electing diversification of their account) from the Plan in payment for [their] units in the CBI stock fund because it would have had an adverse effect on the other Plan participants. CBI could not repurchase the stock and the only other party that could have repurchased his stock was the [Plan]. As a result, CBI properly concluded that it could not grant [the Bryants'] April 2009 diversification request.

[The Bryants'] citations to cases regarding impossibility in the context of breach of contract cases under Alabama law are inapplicable here. [The Bryants'] Claim[s] arise[] under ERISA and [are] therefore subject to federal law interpreting ERISA plans, not Alabama state law interpreting contracts. Moreover, CBI does not seek to excuse a breach of the Plan on the basis of impossibility. Instead, there is no breach of the Plan because CBI was acting in the best interest of all of the Plan beneficiaries when it declined to honor [the Bryants'] April 2009 diversification request. Accordingly, the Denial of [the Bryants'] Claim[s] is upheld.

. . .

[The Bryants] claim[] that [their] November 2009 diversification request was an attempt to mitigate [their] damages. At the time CBI received [the Bryants'] November 2009 diversification request, however, CBI reasonably believed that, based upon the information provided to Plan participants in its November 2009 letter, [the Bryants were] voluntarily electing for [their] shares to remain in the Plan and to revoke [their] April 2009 diversification request. As a result, [the Bryants'] November 2009 diversification request nullified and voided

11

his April 2009 diversification request, and there is no outstanding diversification request by [the Bryants]. For this reason, the Denial of [the Bryants'] Claim is upheld.

(Doc. 1-13 at 3-4; Doc.1-14 at 3-4).  This action followed.[4]

## III.   DISCUSSION

### A.   Counts Two and Three

As recently reiterated by the Eleventh Circuit in the unpublished decision of

*Nolley v. Bellsouth Long Term Disability Plan For Non-Salaried Employees*, No.

14-13470, 2015 WL 1947390, at *1 (11th Cir. May 1, 2015):

> [u]nder ERISA's civil enforcement provisions, a plan participant may bring a civil action against the plan administrator to recover wrongfully denied benefits due to her under the terms of the plan. *See* 29 U.S.C. § 1132(a)(1).  Although ERISA itself does not provide any standards for judicial review of a plan administrator's benefits determination, the Supreme Court has articulated a framework for judicial review, which we have distilled into a six-part test. *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 672 (11th Cir. 2014).  Thus, a court reviewing a plan administrator's benefits decision should conduct the following multi-step analysis:
>
> > (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

---

[4] On June 29, 2012, the Bryants filed a previous case regarding these same accounts, which was dismissed, without prejudice, on March 3, 2014, for failure to exhaust administrative remedies.  *See Bryant, et al. v. Community Bankshares, Inc., et al.,* 2:12-CV-0562-MEF-CSC (Doc. 40).

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious. [*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011).]

In tackling the first prong of the six-part test, we review the administrator's decision for correctness, based upon the evidence before the administrator at the time of its benefits decision. *Melech*, 739 F.3d at 672. If we would have reached the same decision as the administrator, the judicial inquiry ends, and judgment in favor of the administrator is appropriate. *Id.* at 672–73.

*Nolley v. Bellsouth Long Term Disability Plan For Non-Salaried Employees*, No. 14-13470, 2015 WL 1947390, at *1 (11th Cir. May 1, 2015) (emphasis added).  All parties apply the above standard to this case (and all counts therein).

However, ERISA's civil enforcement provisions are not limited to a review of

benefit denial decisions.  Instead, "ERISA provides 'a panoply of remedial devices' for participants and beneficiaries of qualifying benefit plans." *Oliver v. Aetna Life Ins. Co.*, 55 F. Supp. 3d 1370, 1377 n. 8 (N.D. Ala. 2014) (Hopkins, J.) *(quoting Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)).  "[A] participant or beneficiary [may bring a civil action]: to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).  The first count of the complaint alleges it is an action "to enforce rights under the terms of the plan."  (Doc. 1 at 8).  Although not specifically mentioning "benefits," this claim is still, in essence, a claim to determine eligibility to benefits under § 1132(a)(1)(B).  Accordingly, the court agrees with the parties that it is subject to the six-part standard enumerated above.

Count Two alleges a breach of fiduciary duty.  The basis for this count is found in 29 U.S.C. §§ 1104, 1109, and 1132(a)(2)-(3).  It is <u>not</u> an action to recover benefits due (*i.e.*, challenging a benefits-denial decision).  Thus, Count Two is not subject to the six-part standard.  However, the defendant, in its motion, applies solely that standard in challenging the sufficiency of this count.

Count Three seeks an award of attorney's fees under 29 U.S.C. § 1132(g)(2). It succeeds or fails based on the success or failure of the other counts.

14

Because the defendants' motion to dismiss is based <u>exclusively</u> on the argument that the plaintiffs did not allege sufficient facts to make it plausible that the plan administrator acted arbitrarily or capriciously when it denied "[p]laintiff's claim for benefits" (doc. 15 at 10), and because Count Two is <u>not</u> a claim for benefits, the motion fails as to Count Two.  Since Count Two survives, the motion also fails as to Count Three.[5]

## B.    Count One

As noted above, the defendant's motion is based exclusively on the argument that the plaintiffs did not allege sufficient facts to make it plausible that the Administrator acted arbitrarily or capriciously when it denied "[p]laintiff's claim for benefits." (Doc. 15 at 10).  In response to this argument, the plaintiff first argues that "the denial of benefits [was] *de novo* wrong and the Administrator lacked the authority to review the claims." (Doc. 32 at 6).  He then argues that, "even assuming the Plan Administrator was properly authorized to review the claims, he lacked reasonable grounds supporting his decision."  (Doc. 32 at 6).

First, the <u>complaint</u> does not contain even the conclusory allegations that the

---

[5]  Because the court determines that the motion is due to be denied, at least in part, the defendants' argument that the complaint should be dismissed <u>with prejudice</u> (Doc. 15 at 11)  is moot.

decision was "*do novo* wrong," "that the Administrator lacked the authority to review the claims," or that the Administrator "lacked reasonable grounds to support his decision." "A plaintiff may not raise new claims in response to a motion to dismiss without seeking leave to file an amended complaint." *Beavers v. City of Atlanta, Ga.*, No. 1:13-CV-3487-AJB, 2015 WL 1509485, at *8 (N.D. Ga. Mar. 31, 2015); *see also, Huls v. Llabona*, 437 F. App'x 830, 832 n. 5 (11th Cir. 2011) ("Because Huls raised this argument for the first time in his response to Llabona's motion to dismiss, instead of seeking leave to file an amended complaint, pursuant to Fed. R. Civ. P. 15(a), it was not properly raised below."); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Even if these conclusory statements had appeared in the complaint, they would be of no consequence. *See Iqbal*, 556 U.S. at 678 ("First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Even assuming the complaint <u>had</u> alleged that the decision of the Administration was *de novo* wrong, the plaintiffs make no <u>argument</u> in their brief to support this statement, focusing instead on whether the Administrator's decision

16

lacked a reasonable basis.  The court therefore rejects this undeveloped argument.

The plaintiffs also argue that they:

> are entitled to discovery to prove that the Bank had no administrative remedy in place at the time the first lawsuit was filed. Bankshares ESOP was dissolved. At the time the first action was filed, no employees participated in the ESOP. Doc. 1-5 at ¶ 7. There were no ESOP related statements or documents that crossed Dave Bryant's desk in his capacity as President of the Bank and Vice Chairman of the Board of Directors. *Id.* He received no reports concerning the ESOP in his capacity as a Plan member. *Id*. The Plan did not have an administrator. *Id.* The Bryants are entitled to take discovery to prove that the Plan had no validly appointed Plan administrator who had authority to deny his claims. *See Ludwig v. NYNEX Serv. Co.*, 838 F. Supp. 769, 781-82 (S.D.N.Y. 1993) (providing a survey of the futility doctrine); *Hutchinson v. Wickes Companies, Inc.*, 726 F. Supp. 1315, 1321 (N.D. Ga. 1989) ("Plaintiffs argue, and the court agrees, that resort to administrative remedies in this action would be futile because the Plan no longer exists."); *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 232 (5th Cir. 1997) ("As other courts have recognized, when a plan's review apparatus has been abolished there is no need for a claimant to go through the formalities.").
>
> Plaintiffs believe that there was no Plan Administrator at the time his claims were filed and that the ESOP was defunct. Plaintiffs have supported these allegations with sworn testimony and supporting facts supporting this position. Put differently, there was no one at the Bank or Bankshares with the authority to review the Bryants' claims. As a result, there is a legitimate question of fact concerning whether the purported Plan Administrator was actually "vested with discretion in reviewing claims." *Blankenship*, 644 F.3d at 1355. As a result, if the Court finds any evidence that the denial is *de novo* wrong, it should permit the Bryants discovery to prove that the administrative process was a sham.

(Doc. 32 at 6).

To the extent that the plaintiffs are arguing the futility doctrine, the argument

17

has no merit, and really makes no sense, since they have already exhausted their administrative remedies.  Further, the futility doctrine argument was rejected by the court in the previous case filed by these same plaintiffs, based on these same facts. *See Bryant et al v. Community Bankshares, Inc. et al.*, 2:12-cv-00562-MEF-CSC, at Doc. 40.

The plaintiffs also argue that the Administrator was not vested with discretion, apparently based on their "belief," that "there was no one at the Bank or Bankshares [left] with the authority to review the Bryants' claims." (Doc. 32 at 7).  Their "belief" does not comport with the following clear language of the Plan:

> 7.3 Claims Procedure - The Plan Administrator shall have the sole and exclusive discretionary power to construe and interpret the Plan, and to determine all questions that may arise thereunder, including, but not limited to, (the eligibility of individuals to participate in the Plan, the amount of benefits to which any Participant or Beneficiary may become entitled hereunder, and any situation not specifically covered by the provisions of the Plan, and the Plan Administrator's decisions on such matters shall be final and binding on all parties.

(Doc. 1-1 at 40).   Other than their vague reference to "sworn testimony and supporting facts," the plaintiffs do not explain what support or authority they have for why the Administrator's discretionary authority to review claims ceased or otherwise have was non-existent under the circumstances of this case.[6]

---

[6] The plaintiffs are likely referring to the affidavit of Dave Bryant, attached to the complaint, wherein he states:

Finally, this court determines, based on the allegations in the complaint, and those in the attachments thereto, that the decision of the Administrator to deny the relief the plaintiffs sought was, at the very least, not arbitrary and capricious for the purpose of deciding the merits of Count One.  "'As long as a reasonable basis appears for [the] decision ... , it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision.'"  *White v. Coca Cola Co.*, 542 F.3d 848, 856 (11th Cir. 2008) (quoting *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989)).  In the instant case, the facts alleged in the complaint, and the attachments thereto, establish that the Administrator's decision to deny the plaintiffs the relief they sought was based upon the fact that: (1) Bankshares had a fiduciary responsibility to act for the benefit of all participants and

---

To my knowledge, after the cash was distributed, the ESOP plan was effectively terminated. Community Bankshares sent a letter on November 2, 2009, informing the participants that their participation in the ESOP was terminated .... I know of no employees or officers of the Bank who participate in the ESOP today. I have seen no documents or statements related to the ESOP in my capacity as CEO and President of Community Bank and Trust of Alabama or Vice Chair of the Board of Directors. There have been no reports concerning the ESOP submitted to the Board or the Plan participants since November 2009. At a later date, it was reported to me by the newly elected President of Community Bankshares Inc., William Stump, that the ESOP plan was being terminated. There have been no reports concerning the ESOP submitted to the Alabama Board or the Plan participants since November 2009. To my knowledge, the ESOP plan has no named administrator or trustees.

(Doc. 32 at 83).  These statements in no way establish that the Administrator was not vested with authority to review the plaintiffs' claims.

it could not honor the plaintiffs' April 2009 diversification elections to the detriment of other Plan participants; and (2) in any case, the plaintiffs ultimately elected for their shares to remain invested in the Plan.  These two reasons, each separately and alternatively, form a reasonable basis for the decision.  Accordingly, Count One is due to be dismissed.  *See, Holley v. Empire State Carpenters Pension Plan*, 865 F. Supp. 2d 352, 356 (W.D.N.Y. 2012) (granting motion to dismiss where plaintiff "failed to plausibly allege that the defendants' determination to deny his benefits application was arbitrary and capricious").

## IV.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the defendants' motion to dismiss (Doc. 14) be **GRANTED** as to Count One, and that Count One of the Complaint be **DISMISSED WITH PREJUDICE**.   In all other respects it is **RECOMMENDED** that the motion be **DENIED**.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **August 11, 2015**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

20

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 28th day of July, 2015.

/s/ Paul W. Greene
United States Magistrate Judge

21