IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVE BRYANT, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 2:14-CV-1074-WKW |
| ) | [WO] |
| COMMUNITY BANKSHARES, ) | |
| INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Based upon a referral pursuant to 28 U.S.C. § 636(b), on July 28, 2015, the Magistrate Judge entered a Report and Recommendation on Defendants' pending motion to dismiss the three counts in the Complaint. (Doc. # 34.) The Magistrate Judge recommended that this court grant Defendants' motion to dismiss Count One with prejudice and deny Defendants' motion to dismiss Counts Two and Three. Plaintiffs and Defendants filed timely objections to the proposed findings and recommendations. (Docs. # 35, 36.) On September 30, 2015, an Order was entered, adopting in part and rejecting in part the Recommendation of the Magistrate Judge. This opinion explains the reasoning for the court's ruling. For the reasons that follow, the Recommendation that Defendants' motion to dismiss Count One be granted will be

rejected, the Recommendation that Defendants' motion to dismiss Counts Two and Three be denied will be adopted, and Defendants' motion to dismiss will be denied.

## I.  JURISDICTION AND VENUE

The court exercises subject-matter jurisdiction over this ERISA action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).  The parties do not contest personal jurisdiction or venue.

## II.  STANDARD OF REVIEW

A party's timely written objections to a magistrate judge's report and recommendation require this court's *de novo* review of those portions of the report to which the party objects.  *See* 28 U.S.C. § 636(b).  After completing its review, the court may accept, reject, or modify the report, in whole or in part.  *See id.*

The court reviews the Report and Recommendation *de novo*, applying the same standard as the magistrate judge applied.  When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  Rule 12(b)(6) review also includes consideration of any exhibits attached to the complaint.  *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

2

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### III. BACKGROUND[1]

Plaintiffs Dave Bryant and Vicki Bryant are long-time employees of Defendant Community Bankshares, Inc. ("Bankshares"). They thought that their investment in their employer's Employee Stock Option Plan (the "ESOP" or "Plan") would pay off during their retirement, but in January 2010, Bankshares's primary asset – Community Bank & Trust – collapsed.[2] Because the Plan was invested primarily in Bankshares's stock, it was rendered worthless, and Plaintiffs received little more than pennies on the dollar. In this lawsuit against Bankshares and its fiduciaries, Plaintiffs contend that those pennies could have been worth dimes, or maybe more, had the Plan diversified their investments as they had requested.

---

[1] The facts, which are set out in more detail in the Report and Recommendation, are briefly summarized here.

[2] An ESOP is "a type of pension plan intended to encourage employers to make their employees stockholders." *Steinman v. Hicks*, 352 F.3d 1101, 1102 (7th Cir. 2003).

3

Plaintiffs bring claims for violations of ERISA, which undisputedly governs the Plan.[3] In their first cause of action, Plaintiffs allege that they properly invoked an unqualified right under the terms of the Plan to redirect a percentage of their Plan holdings in Bankshares's stock to their individual retirement accounts, but that the Plan administrator failed to follow their investment instructions. The Complaint invokes 29 U.S.C. § 1132(a)(1)(B)'s provision permitting plan participants "to enforce [their] rights under the terms of the plan."[4] § 1132(a)(1)(B). Plaintiffs bring a second claim alleging a breach of a duty of care pursuant to 29 U.S.C. §§ 1109, 1132(a)(2), and 1132(a)(3). The gist of this second claim is that the Plan imposed upon its fiduciaries an obligation to diversify Plaintiffs' investments upon their request and that the fiduciaries failed to administer the Plan in accordance with its mandatory provisions. Finally, Plaintiffs designate their request for attorney's fees and costs pursuant to 29 U.S.C.

---

[3] Plaintiffs allege that the Plan qualifies as an "employee pension benefit plan" that is controlled by ERISA. (Compl. ¶ 14.) This allegation is uncontested.

[4] Most § 1132(a)(1)(B) actions involve claims to "recover benefits due to [a participant] under the terms of his plan," but the Complaint frames the claim singularly as one to "enforce [Plaintiffs'] rights under the terms of the plan." § 1132(a)(1)(B). Both types of claims are enumerated in § 1132(a)(1)(B). *See* § 1132(a)(1)(B) (providing that a plan's participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"). The Seventh Circuit has analyzed a claim of a similar nature as Plaintiffs' as a claim under § 1132(a)(1)(B) to enforce rights under the terms of a plan. *See Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 657 (7th Cir. 2005) (characterizing the plaintiffs' claim that the "plan administrator had wrongfully denied their requests to move their retirements funds from [employer] stock into diversified investments" as a § 1132(a)(1)(B) claim to enforce rights under the plan). There is, thus, authority, case law and statutory law, to support Plaintiffs' contention that it is entitled to enforce the right they seek under § 1132(a)(1)(B). Absent any contrary argument, the court makes the same assumption for purposes of resolving the motion to dismiss.

§ 1132(g)(1) as a third cause of action.  (*See* Compl. ¶¶ 26–32.)  Consistent with the Report and Recommendation's labeling, these claims will be referred as to Count One, Count Two, and Count Three.

Defendants moved to dismiss the Complaint under Rule 12(b)(6).  Pursuant to a referral under § 636, the Magistrate Judge entered a Report and Recommendation on the motion to dismiss, recommending that Defendants' motion to dismiss be granted with prejudice as to Count One, but that the motion otherwise be denied.  Neither party obtained full satisfaction from the Report and Recommendation; therefore, both Plaintiffs and Defendants have filed objections to the Recommendation.

## IV.  DISCUSSION

**A.    Count One:  § 1132(a)(1)(B)**

The Recommendation evaluated Plaintiffs' § 1132(a)(1)(B) claim under the Eleventh Circuit's six-step standard governing judicial review of a plan administrator's benefits decision.[5]  (Doc. # 34, at 12–13.)  Here is that standard:

> (1)    [a]pply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2)    If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

---

[5] Both parties also apply the six-step standard to Plaintiffs' claim seeking to enforce alleged rights under their Plan.

5

> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). The first four steps of the standard resolve the motion to dismiss. Because the Plan documents and the Plan administrator's decisions are attached to the Complaint, there is a sufficient record to apply the six-step standard on Rule 12(b)(6) review.

### 1. Step One

At step one, the court considers whether the Plan administrator's interpretation of the Plan was "wrong." "[W]rong" is "the conclusion a court reaches when, after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the claims administrator's plan interpretation." *HCA Health Servs. of Ga., Inc.*, 240 F.3d 982, 994 n.23 (11th Cir. 2001), *overruled on other grounds by Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008). This review should be "based on the record before the administrator at the

time its decision was made." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008).

The Recommendation found that the Complaint "does not contain even conclusory allegations that the decision was '*d[e] novo* wrong.'" (Doc. # 34, at 15–16.) The court disagrees and finds that the Complaint and attached documents contain sufficient predicate facts to support an allegation that the Plan administrator's decision was "*de novo* wrong."

Plaintiffs rely on § 8.3 of the Plan for their § 1132(a)(1)(B) claim. Section 8.3 of the Plan uses the imperative command "shall" three times when defining an eligible participant's right to diversify a percentage of his or her investments in the Plan. First, the Plan provides that "[e]ach Eligible Participant *shall*, during any Qualified Election period, be permitted to diversify the investment of a portion of his Employer Contribution Account in accordance with the provisions of this Section 8.3." Second, the Plan spells out that an "Eligible Participant electing to diversify his Account *shall* direct the Plan Administrator to distribute (or transfer to an Individual Retirement Account or another qualified retirement plan) shares of Company Stock, rounded to the nearest whole share, equal to that portion of the Participant's Employer Contribution Account that is covered by the election." Third, the Plan directs that "[s]uch transfer or distribution *shall* be made no later than ninety (90) days after the last day of the Qualified Election Period during

which such participant directed such investment." (Plan, Art. VIII, § 8.3 (emphases added).)

Section 8.3 is couched in mandatory terms that are unambiguous and leave the Plan administrator no option but to implement a proper election to diversify investments. Plaintiffs allege that they made just such a proper election, and the Plan administrator's decision reciting the reasons for rejecting Plaintiffs' elections does not question the validity of those elections. More specifically, Plaintiffs allege that, in April 2009, they exercised the "right to diversify" their investments under § 8.3, that their elections complied with the strictures of § 8.3, and that, therefore, the Plan administrator had a contractual duty to "diversify a portion o[f] [their] account" within ninety days of their election but refused to do so. (Compl. ¶¶ 15–20; *see also* ESOP Investment Diversification Notices, which Plaintiffs completed to invoke the Plan's provisions governing participants' rights concerning the diversification of their investments.) In short, Plaintiffs argue that, because their elections to diversify their investments satisfied the requirements of § 8.3, the Plan administrator's decision to reject each Plaintiff's election was wrong based upon the mandates of § 8.3.

The foregoing facts, which are gleaned from the Complaint's allegations and the exhibits attached to the Complaint, plead enough to demonstrate, for purposes of defeating the motion to dismiss, that the Plan required an election period to permit participants to diversify a percentage of their investments, that Plaintiffs (as

eligible participants) properly made an election, and that the Plan administrator wrongly failed to diversify their investments in the manner they elected. *See generally Iqbal*, 556 U.S. at 678 (explaining that to survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 570)). It is not fatal to Plaintiffs' claim that the Complaint omits the phrase "*de novo* wrong."

### 2. *Step Two*

"Denial of benefits under an ERISA plan that gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan is reviewed by the district court for abuse of that discretion." *Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th Cir. 1997) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112–13 (1989)); *see also Blankenship*, 644 F.3d at 1355 n.5 ("In ERISA cases, the phrases 'arbitrary and capricious' and 'abuse of discretion' are used interchangeably."). The Eleventh Circuit has provided parameters as to the type of language that is necessary to imbue the Plan administrator with the requisite discretion.

An administrator's decision will be subject to the arbitrary-and-capricious standard of review where the plan provides that the administrator "shall have discretionary authority to 1) interpret policy provisions, 2) make decisions regarding eligibility for coverage and benefits, and 3) resolve factual questions

9

relating to coverage benefits." *HCA Health Servs. of Ga., Inc.*, 240 F.3d at 995. The Eleventh Circuit also has found similar plan language that gave the administrators "full and exclusive authority to determine all questions of coverage and eligibility," as well as "full power to construe the provisions of [the] Trust" conferred the requisite discretionary authority on the plan administrator. *Guy v. Se. Iron Workers' Welfare Fund*, 877 F.2d 37, 38–39 (11th Cir. 1989).

Section 7.3 provides that the Plan administrator "shall have the sole and exclusive discretionary power to construe and interpret the Plan, and to determine all questions that may arise thereunder . . . , including the amount of benefits to which any Participant or beneficiary may become entitled hereunder . . . ." (Plan, Art. VII, § 7.3.) The Recommendation appropriately relies on § 7.3 for its finding that the Plan administrator was vested with "discretionary authority to review claims." (Doc. # 34, at 18.) Accordingly, because 7.3 gives full discretion and authority to the Plan administrator to determine eligibility for benefits and to construe and interpret all terms and provisions of the Plan, the court finds that arbitrary-and-capricious review applies.

Plaintiffs argue, however, that the Plan administrator had *no discretion* under the mandatory terms of § 8.3 to refuse to diversify their investments upon their proper election and that, therefore, the inquiry under the six-step standard should end at step two. *See Blankenship*, 644 F.3d at 1355 ("(2) If the administrator's decision in fact is '*de novo* wrong,' then determine whether he was

vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision."). The argument is not without curb appeal, as § 8.3's terms, once satisfied, are compulsory on the Plan administrator. But the court is reluctant to deny Defendants review under the deferential arbitrary-and-capricious standard when the Plan affords broad discretion overall to the Plan administrator. There are instances, for example, where the Plan administrator's discretion to interpret policy provisions appropriately could come into play even in light of the mandatory language in § 8.3. For example, the Plan administrator would have discretion to determine whether a Plan participant is eligible to make an election under § 8.3. *Cf. Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 660 (7th Cir. 2005) (recognizing the fiduciary's discretion to deny the plaintiffs' request under a similar plan provision that gave a qualifying participant the right to diversify his or her benefits where the plaintiffs had not attained the age of fifty-five as required to make an election). Hence, the court turns to whether the Plan administrator's decisions were arbitrary and capricious.

3. ***Step Three***

In step three, the court must decide whether the Plan administrator's resolution of Plaintiffs' claims was "arbitrary and capricious" or "an abuse of discretion." *Wilson v. Walgreen Income Prot. Plan for Pharmacists & Registered Nurses, Walgreen Co.*, 942 F. Supp. 2d 1213, 1246 (M.D. Fla. 2013). Although under this standard the Plan administrator's interpretation of the Plan is entitled to

11

a high level of deference, the standard is not toothless. "[A] deferential standard of review does not mean that the plan administrator will prevail on the merits." *Conkright v. Frommert*, 559 U.S. 506, 521 (2010). If "no reasonable basis exists for the decision," then the decision is arbitrary and capricious and cannot stand. *Shannon*, 113 F.3d at 210. A plan administrator acts arbitrarily and capriciously, for example, when he or she "construe[s] provisions of a plan in a way that clearly conflicts with the plain language of the Plan" or that "renders nugatory other provisions of the Plan." *Tapley v. Locals 302 & 612 of the Int'l Union of Operating Eng'r-Emp'rs Constr. Indus. Ret. Plan*, 728 F.3d 1134, 1139 (9th Cir. 2013) (internal citations, brackets, and quotation marks omitted). Moreover, generally, "[r]eview of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship*, 644 F.3d at 1354.

The Recommendation finds that the Plan administrator offered two reasons for denying Plaintiffs' elections to diversify their investments and that these reasons, "each separately and alternatively, form a reasonable basis for the decision" of the Plan administrator to refuse to honor Plaintiffs' requests to diversify their investments. (Doc. # 34, at 20.) Each reason is discussed in turn and is rejected as an abuse of the Plan administrator's discretion.

The first reason the Recommendation points to is the Plan administrator's decision that, in April 2009, based upon the plummeting value of Bankshares's

stock, honoring Plaintiffs' diversification requests would have had a detrimental effect on Plan participants as a whole. (*See* Doc. # 34, at 19–20 ("Bankshares had a fiduciary responsibility to act for the benefit of all participants and it could not honor the plaintiffs' April 2009 diversification elections to the detriment of other Plan participants.").) It is true that the Plan administrator has an overarching duty to discharge its duties "solely in the interest of the Participants" (Plan, Art. VIII, § 8.4), but neither the Plan administrator nor Defendants have cited any authority or Plan provision that gives the Plan administrator the option to override mandatory Plan terms when the Plan administrator believes that doing so would protect the greater good of Plan participants.

More specifically, the Plan administrator does not point to any provision in the Plan that permitted it to make an exception to an eligible participant's right under § 8.3 to make an election to diversify investments when, as the Plan administrator says, the value of the company's stock had "dramatically declined in value." (Doc. # 34, at 8.) To the contrary, the Plan expressly provides that the "Plan Administrator *shall have no power* to add to, subtract from or modify any of the terms of the Plan, or to change or add to any benefits provided by the Plan, or to waive or fail to apply any requirements of eligibility for a benefit under the Plan." (Plan, Art. VII, § 7.3 (emphasis added).) As has been explained, the Plan spells out clearly that the Plan administrator has a contractual obligation to abide by an eligible participant's proper election under § 8.3 to diversify his or her

13

investments. If the Plan administrator could supersede the mandatory provisions of § 8.3 and deny an eligible participant's right to diversify his or her investments, that action, in effect, would constitute an amendment of the Plan in contravention of § 7.3. On the Rule 12(b)(6) documents and briefing, Plaintiffs have made a plausible showing that the Plan administrator's interpretation of the Plan is inconsistent with the plain language of § 8.3, and, therefore, that the Plan administrator's interpretation does not provide a reasonable basis for the Plan Administrator's denial of Plaintiffs' rights to diversify their investments.[6]

The second reason the Recommendation relies upon is the Plan administrator's conclusion that Plaintiffs "ultimately elected for their shares to remain invested in the Plan." (Doc. # 34, at 20.) In the Plan administrator's words, each Plaintiff, in November 2009, "revoked his [or her] April 2009 Diversification Request and rendered it null and void. There is no outstanding diversification request by" either Plaintiff. (Doc. # 1-10, at 6; Doc. # 1-11, at 6.) The November 2009 revocations post-date the Plan administrator's contractual

---

[6] The Plan administrator also references Bankshares's decision, apparently made at an October 2009 board meeting, to suspend the Plan's contractual obligations to honor diversification requests based upon the dramatic decline in the value of its stock. (*See, e.g.*, Decision on Dave Bryant's Claim for Benefits, at 5 (Doc. # 1-10).) But again the Plan administrator does not cite any Plan provision that permits the suspension, and Defendants' briefing on the motion to dismiss does not fill that gap. In any event, the October 2009 suspension decision occurred subsequent to the June 30, 2009 deadline for the Plan administrator to implement Plaintiffs' diversification requests, and the briefing on the motion to dismiss does not attempt to explain how the October 2009 decision can supply the reason for why, months earlier, the Plan administrator refused to honor Plaintiffs' diversification requests. *See Blankenship*, 644 F.3d at 1354 (Generally, "[r]eview of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision.").

deadline for implementing Plaintiffs' prior April 2009 diversification requests and, thus, regardless of the validity of the revocations, were not "material available to the administrator at the time it made its decision." *Blankenship*, 644 F.3d at 1354. Defendants have provided no authority or reasoned explanation that justifies the Plan administrator's post-hoc reliance on the November 2009 revocations as supplying the reason for the Plan administrator's rejection of the April 2009 diversification requests.

In sum, Plaintiffs plausibly allege that no reasonable basis exists for the Plan administrator's refusal to honor Plaintiffs' April 2009 diversification requests. The factual content gathered from the Complaint and its attachments permits the reasonable inference that the Plan administrator applied § 8.3 in a manner that "clearly conflicts with [the Plan's] plain language" and that "render[s] nugatory" those provisions that prohibit a plan administrator from modifying the terms of the Plan. *Tapley*, 728 F.3d at 1139. Moreover, the Plan administrator's decision that Plaintiffs revoked their diversification requests in November 2009 is not based upon material that was before the Plan administrator at the time it denied Plaintiffs' April 2009 diversification requests. The analysis proceeds to step four.

### 4. *Step Four*

Because the Complaint and attached documents plausibly support the conclusion that no reasonable grounds exist for the Plan administrator's decision to deny Plaintiffs' requests to diversify their investments, the inquiry ends. In other

words, there are plausible allegations to support the reversal of the Plan administrator's decision. *See Blankenship*, 644 F.3d at 1355 ("If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision.").

### 5. *Summary*

Based upon the record at present, the Complaint's allegations and attachments are sufficient to survive the judicially deferential arbitrary-and-capricious standard of review. Plaintiffs have made a sufficient demonstration that the Plan administrator's decision is both *de novo* wrong and arbitrary and capricious. It may be that other documents or arguments not presented during Rule 12(b)(6) review support a contrary conclusion, but for now Count One goes forward. Defendants' motion to dismiss Count One is due to be denied.

### B. Counts Two and Three

The Magistrate Judge recommends that Defendants' motion to dismiss be denied as to Counts Two and Three. The court carefully has reviewed Defendants' objections to that conclusion and finds that the Recommendation is correct. Accordingly, the Recommendation is due to be adopted as to Counts Two and Three, and Defendants' motion to dismiss Counts Two and Three is due to be denied.

### V. CONCLUSION

For these reasons, in a prior Order, the Recommendation was adopted in part and rejected in part. It is further ORDERED as follows:

1. Plaintiffs' Objection (Doc. # 36) is SUSTAINED.

2. Defendants' Objection (Doc. # 35) is OVERRULED.

3. Defendants' motion to dismiss (Doc. # 14) is DENIED.

4. This case is REFERRED back to the Magistrate Judge for further proceedings.

DONE this 14th day of October, 2015.

                                                /s/ W. Keith Watkins
                                    CHIEF UNITED STATES DISTRICT JUDGE